UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

Plaintiff,

v.

AGAVE ELMWOOD INC. d/b/a AGAVE
MEXICAN RESTAURANT; DON
TEQUILA DOS, INC. d/b/a EL AGAVE
MEXICAN RESTAURANT; DON
TEQUILA 73, INC. d/b/a DON TEQUILA
MEXICAN RESTAURANT, as successor to
DON TEQUILA, INC.; MIS REINAS
FOODS, INC. d/b/a LA DIVINA
MEXICAN STORE; SERGIO MUCINO,
individually; and JOSE MANUEL
SANCHEZ-OCAMPO, individually,

Defendants.

**DECISION AND ORDER**

1:17-CV-00605 EAW

## INTRODUCTION

On June 30, 2017, plaintiff R. Alexander Acosta, Secretary of Labor for the United States Department of Labor ("Plaintiff") commenced this action pursuant to the Fair Labor Standard Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* (Dkt. 1). Plaintiff seeks back wages, liquidated damages, and injunctive relief from defendants Agave Elmwood Inc. d/b/a Agave Mexican Restaurant ("Agave Elmwood"); Don Tequila Dos, Inc. d/b/a El Agave Mexican Restaurant ("El Agave"); Don Tequila 73, Inc. d/b/a Don Tequila Mexican Restaurant, as successor to Don Tequila, Inc. ("Don Tequila"); Mis Reinas Foods, Inc.

- 1 -

d/b/a La Divina Mexican Store ("La Divina"); Sergio Mucino, individually ("Mucino"); and Jose Manuel Sanchez-Ocampo, individually ("Sanchez-Ocampo") (collectively "Defendants") for allegedly failing to pay employees minimum wage and overtime premiums, and for maintaining false and inaccurate time and pay records. (Dkt. 1).

Presently before the Court is Plaintiff's motion to approve the proposed consent judgment as to Sanchez-Ocampo. (Dkt. 34). For the reasons set forth below, the Court finds the proposed consent judgment ("proposed Consent Judgment") to be acceptable.

## BACKGROUND

The following alleged facts are drawn from the complaint. Defendants operate Mexican restaurants in or around Buffalo, New York. (Dkt. 1 at 1). From June 30, 2014, until at least October 18, 2016, Sanchez-Ocampo was a manager of Agave Elmwood, La Divina, El Agave, and Don Tequila. (*Id.* at ¶¶ 13, 22). He had the authority to hire, fire, and supervise employees; control their hours worked; and determine their compensation. (*Id.* at ¶ 13). Defendants employed dishwashers, cooks, servers, bussers, bartenders, and hosts at their restaurants. (*Id.* at ¶ 22).

They had both part-time and full-time servers, and the full-time servers typically worked more than 40 hours per week. (*Id.* at ¶¶ 25-26). Defendants usually did not pay the full-time servers any hourly wages, forcing those servers to rely only on tips received from customers. (*Id.* at ¶¶ 25, 29). Defendants also did not inform the servers that their tips would be credited against the minimum wage. (*Id.* at ¶ 31). Additionally, the kitchen employees and bussers generally worked 60 to 66 hours per week. (*Id.* at ¶¶ 33-34). These employees were generally paid a fixed weekly sum regardless of how many hours they

worked, and their pay rate regularly fell below the applicable minimum wage. (*Id.* at ¶¶ 35-39). Defendants also did not pay several employees at all for construction work done at El Agave or for their last week of work. (*Id.* at ¶¶ 41-43).

The records kept of employees' daily and weekly hours, employees' regular hourly rates and weekly payments, number of employees, and payroll were not adequately or accurately kept. (*Id.* at ¶¶ 45-49). Instead, Defendants paid their employees in cash and check while maintaining inaccurate records. (*Id.* at ¶ 50).

Plaintiff began investigating Defendants' compliance with the FLSA in November 2016. (*Id.* at ¶ 57). On June 30, 2017, Plaintiff filed the instant lawsuit (Dkt. 1), and discovery is currently ongoing (Dkt. 36). Plaintiff filed the proposed Consent Judgment on September 26, 2018. (Dkt. 34).

## DISCUSSION

### I. Standard for Approving a Consent Judgment

"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved' . . . in the event that the consent decree includes injunctive relief." *S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"[I]n evaluating the proposed [c]onsent [d]ecree, deference is accorded to a government agency . . . and other parties proposing the settlement. Further, the policy of encouraging settlements is particularly strong where the settlement is proposed by a

government agency acting in the public interest." *United States v. Gen. Elec. Co.*, 460 F. Supp. 2d 395, 401-02 (N.D.N.Y. 2006) (citations omitted), *aff'd sub nom. Town of Ft. Edward v. United States*, No. 06-5535-CV, 2008 WL 45416 (2d Cir. Jan. 3, 2008). "It is well settled that the function of the reviewing court is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chems. & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984). "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order." *Citigroup*, 752 F.3d at 294.

## II. The Proposed Consent Judgment Is Fair and Reasonable

When evaluating a proposed consent judgment for fairness and reasonableness, a court should "assess (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294-95 (citations omitted). "The 'primary focus' should be on 'ensuring the consent decree is procedurally proper.'" *S.E.C. v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 369 (S.D.N.Y. 2016) (quoting *Citigroup*, 752 F.3d at 294-95). The Court assesses each factor as applied to the proposed Consent Judgment below.

### A. The Basic Legality of the Proposed Consent Judgment

The Court finds there is basic legality in the proposed Consent Judgment. A proposed consent judgment with the U.S. government is legal as long as the court has authority to enter the judgment and the plaintiff has authority to enforce it. *Caledonian Bank*, 317 F.R.D. at 370; *see Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir. 1999) (terminating a consent decree entered by a district court because a statutory provision in the Prison Litigation Reform Act mandated termination of a consent decree providing for injunctive relief "that was approved or granted in the absence of" certain statutorily required findings). Plaintiff has alleged violations of the FLSA §§ 7, 11, 15(a)(2), and 15(a)(5) by Sanchez-Ocampo, as well as asked for injunctive and monetary relief. (Dkt. 1 at ¶¶ 72-79; *id.* at 12-13). This Court has authority to enter a judgment in this action for injunctive and monetary relief pursuant to 28 U.S.C. §§ 1331 and 1345 and 29 U.S.C. § 217, and Plaintiff has authority to enforce said judgment under 29 U.S.C. §§ 211 and 216(c). *See Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 68 (N.D.N.Y. 2008) ("FLSA § 217 provides that the Secretary of Labor may file an action to enjoin an employer from violating the FLSA, including minimum wage and overtime compensation provisions."); *see, e.g., Chao v. Vidtape, Inc.*, 66 Fed. Appx. 261, 262-63 (2d Cir. 2003) (finding it was proper for the district court to enjoin defendants and to award costs to the Secretary of Labor as the plaintiff in the action for violations of the FLSA's minimum wage, overtime, and record-keeping provisions). The charges and relief are also accurately stated in the consent judgment against Sanchez-Ocampo. (Dkt. 34-1 at 1-5). Therefore, the proposed Consent Judgment meets the basic legality standard.

### B. The Proposed Consent Judgment Is Clear

The Court also finds that the proposed Consent Judgment is clear. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) ("A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden." (internal quotations and citations omitted)). Here, the proposed Consent Judgment lays out who it applies to (Sanchez-Ocampo), what the alleged violations are (FLSA §§ 6, 7, 11(c), 15(a)(2), and 15(a)(5)), where they happened (the names and addresses of restaurant Defendants in Buffalo), when they happened (June 30, 2014 to October 18, 2016), how they happened (Sanchez-Ocampo failing to keep accurate pay and time records, paying a fixed weekly salary, not paying hourly rates or overtime, and not paying wages at all), and that Sanchez-Ocampo admits to all of the above. (Dkt. 34-1 at 1-3, 7). It also specifically states exactly what injunctive relief is proposed, how much Sanchez-Ocampo is ordered to pay, the form of payment, the time schedule for doing so, where the payments should be sent, and what Plaintiff will do with them once received. (*Id.* at 3-6, 9). The Court determines that the proposed Consent Judgment will leave no uncertainty in the mind of Sanchez-Ocampo, and consequently its terms meet the clearness standard.

### C. The Proposed Consent Judgment Reflects a Resolution of the Claims

Additionally, the Court finds the proposed Consent Judgment reflects resolution of the claims in the complaint. Plaintiff claims that Sanchez-Ocampo failed to pay employees minimum wage, overtime premiums, or at all; and that he maintained false and inaccurate time and pay records. (Dkt. 1 at ¶¶ 72-79). The injunctive relief in the proposed Consent

Judgment demands that Sanchez-Ocampo pay his employees minimum wage and overtime, keep adequate records of wages and hours, refrain from threatening employees for whistleblowing, and stop the withholding of the back wages owed to employees. (Dkt. 34-1 at 3-5). Additionally, the proposed Consent Judgment orders Sanchez-Ocampo to pay liquidated damages to the employees.[1] (*Id.* at 5). Therefore, the relief provided in the proposed Consent Judgment reflects resolution of the claims alleged against Sanchez-Ocampo in the complaint.

### D. The Proposed Consent Judgment Is Not Tainted

"A district court must examine whether a consent decree is 'tainted by improper collusion or corruption of some kind,' or 'raises a suspicion that the consent decree was entered into as a result of improper collusion between the [agency] and the settling party.'" *Caledonian Bank*, 317 F.R.D. at 373 (quoting *Citigroup*, 752 F.3d at 295-96). No evidence of collusion or corruption appears in the record. Therefore, the Court finds the proposed Consent Judgment is not tainted.

After considering all of the above factors, the Court determines they all weigh in favor of finding the proposed Consent Judgment to be fair and reasonable.

### III. The Injunctive Relief Does Not Disserve the Public Interest

Finally, the Court finds that the injunctive relief in the proposed Consent Judgment does not disserve the public interest. In order for a court to grant a permanent injunction

---

[1] FLSA § 216(b) provides that employers are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

in a proposed consent decree, "a district court must also consider the public interest...." *Citigroup*, 752 F.3d 294. "The job of determining whether the proposed [agency] consent decree best serves the public interest, however, rests squarely with the [agency], and its decision merits significant deference...." *Id.* at 296. Second Circuit courts have held that a consent judgment should be approved when no participants in the "proceeding have set forth a legitimate basis for concluding that the consent decree would harm the public or 'bar[ ] private litigants from pursuing their own claims.'" *Caledonian Bank*, 317 F.R.D. at 374 (alteration in original) (citing *Citigroup*, 752 F.3d at 297); *see United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 417 (S.D.N.Y. 2018) ("[A]ny arguments regarding whether the Proposed Consent Decree is fair, reasonable, and in the public interest should be addressed by opposing the pending motion for approval of the Proposed Consent Decree."). Here, neither Sanchez-Ocampo nor any other Defendants have raised arguments that the proposed Consent Judgment would harm the public interest. Therefore, the Court defers to the judgment of the Department of Labor and finds that the proposed Consent Judgment best serves the public interest.

## CONCLUSION

Giving due deference to the desires of the parties seeking to enter this proposed Consent Judgment, this Court finds that the record shows the proposed Consent Judgment is fair and reasonable and that it comports with the public interest. Therefore, the proposed Consent Judgment (Dkt. 34-1) is approved, and the approved Consent Judgment, filed as an attachment hereto, constitutes Final Judgment pursuant to Fed. R. Civ. P. 54(b) and 58.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: October 29, 2018
      Rochester, New York

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
R. ALEXANDER ACOSTA, Secretary of Labor, United  :
States Department of Labor,
                                                 :
             Plaintiff,
                                                 :
       v.
                                                 :
AGAVE ELMWOOD INC. d/b/a AGAVE MEXICAN              No. 17-CV-605-EAW-HBS
RESTAURANT; DON TEQUILA DOS, INC. d/b/a EL       :
AGAVE MEXICAN RESTAURANT; DON                       **CONSENT JUDGMENT AS TO**
TEQUILA, INC. d/b/a DON TEQUILA MEXICAN          :  **JOSE MANUEL SANCHEZ-**
RESTAURANT; DON TEQUILA 73, INC. d/b/a DON          **OCAMPO**
TEQUILA MEXICAN RESTAURANT, as successor to      :
DON TEQUILA, INC.; MIS REINAS FOODS, INC.
d/b/a LA DIVINA MEXICAN STORE; SERGIO            :
MUCINO, individually; and JOSE MANUEL
SANCHEZ-OCAMPO, individually,                    :

             Defendants.                         :
-----------------------------------------------------------------

Plaintiff, R. Alexander Acosta, the Secretary of Labor ("Secretary") has filed his complaint and defendant Jose Manuel Sanchez-Ocampo ("Sanchez-Ocampo") has appeared by counsel and hereby agree to the entry of this Judgment without contest in full settlement of the claims that have been made or asserted in this action between the Secretary and defendant Sanchez-Ocampo, individually.

1.      The Secretary's complaint alleges that defendants willfully violated sections 6, 7, 11(c), and 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) (the "Act" or the "FLSA") by failing to pay their employees minimum and overtime wages and failing to make, keep, and preserve adequate and accurate records.

2.      Defendant Sanchez-Ocampo submits to the jurisdiction of this Court over him and over the subject matter of this action. Sanchez-Ocampo admits that this Court has the authority to

enter and enforce this Order and that this Court is the most appropriate venue for any enforcement action that may be required as a result of this Order.

3. Defendant Sanchez-Ocampo admits that he was the general manager of Don Tequila Mexican Restaurant operated by Don Tequila, Inc. at 73 Allen Street, Buffalo, New York 14202 ("Don Tequila"), as well as a manager of Agave Elmwood, Inc. d/b/a Agave Mexican Restaurant, Don Tequila Dos, Inc. d/b/a El Agave Mexican Restaurant, and Mis Reinas Foods, Inc. d/b/a La Divina Mexican Store. Sanchez-Ocampo admits that he received a share of profits from Agave Elmwood, Inc., Don Tequila, Inc., Don Tequila Dos, Inc., and Mis Reinas Foods, Inc.

4. Defendant Sanchez-Ocampo admits that he failed to keep accurate pay and time records for Don Tequila's employees from June 30, 2014 through October 18, 2016.

5. Defendant Sanchez-Ocampo also admits that from June 30, 2014 through October 18, 2016, Don Tequila's kitchen employees and bussers were paid a fixed weekly salary without regard to whether they worked in excess of forty hours in a workweek, and thus, they did not receive overtime at one and one-half the regular hourly rate for all hours exceeding forty when they worked over forty hours in a workweek. Specifically, defendant Sanchez-Ocampo admits that Don Tequila's bussers and kitchen employees, including chefs, cooks, dishwashers, and prep workers, typically worked in excess of forty hours per week, from approximately sixty to sixty-six hours. Bussers received a weekly salary between approximately $200 and $440; dishwashers received a weekly salary of approximately $450; and cooks received a weekly salary between approximately $500 and $700.

6. Defendant Sanchez-Ocampo further admits that from June 30, 2014 through October 18, 2016, Don Tequila's full-time servers were not paid any wages, thereby violating the Act's minimum wage requirements. Defendant Sanchez-Ocampo also admits that Don Tequila's

2

full-time servers typically worked six days per week, from approximately 10:00 a.m. to 10:00 p.m. and sometimes as late as 2:00 a.m. on the weekends. As Don Tequila did not pay their full-time servers any wages, Don Tequila's full-time servers also did not receive overtime at one and one-half the regular hourly rate for all hours exceeding forty when they worked over forty hours in a workweek.

7.   It is, therefore, upon motion of the attorneys for the Secretary and for good cause shown, ORDERED that defendant Sanchez-Ocampo, his agents, servants, employees and those persons in active concert or participation with him be and hereby are, permanently enjoined and restrained from violating the provisions of sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, and must abide by the following:

A.   Defendant Sanchez-Ocampo shall not, contrary to section 6 of the Act, employ any employees who in any workweek are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, at wage rates less than those which are now, or which in the future may become, applicable under section 6 of the Act.

B.   Defendant Sanchez-Ocampo shall not, contrary to section 7 of the Act, employ any employees who in any workweek are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, for workweeks longer than the hours now, or which in the future become, applicable under sections 7 and 15(a)(2) of the Act, unless the employees receive compensation for their employment in

excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates.

C. Defendant Sanchez-Ocampo shall make, keep, and preserve adequate records of employees and of the wages, hours, and other conditions and practices of employment as prescribed by regulations issued pursuant to sections 11(c) and 15(a)(5) of the Act and found at 29 C.F.R. Part 516.

D. Defendant Sanchez-Ocampo shall not discharge, blacklist, demote, suspend, threaten, harass, intimidate, or in any other manner discriminate against an employee, including soliciting the repayment of compensation paid to an employee pursuant to this Judgment, because the employee engages in or is believed to have engaged in any of the following activities:

(1) Discloses, protests, or threatens to disclose or protest, to a supervisor or to a public agency, any activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of the Act or a rule or regulation promulgated pursuant to the Act;

(2) Provides information to, or testifies before, any public agency or entity conducting an investigation, hearing or inquiry into any alleged violation of the Act or a rule or regulation promulgated pursuant to the Act, by the employer or another employer with whom there is a business relationship; or

4

    (3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of the Act or a rule or regulation promulgated pursuant to the Act.

8. Further, it is ORDERED that defendant Sanchez-Ocampo is enjoined and restrained from withholding the payment of a total of $314,413.94 in back wages owed plus post-judgment interest due to the employees in the amounts listed on Exhibit A.

9. It is further ORDERED that defendant Sanchez-Ocampo shall pay $314,413.94 in liquidated damages due to the employees in the amounts listed in Exhibit A, for a total of $628,827.88.

10. As part of fulfilling the requirements of paragraphs 8 and 9, defendant Sanchez-Ocampo shall pay $2,000.00 within five days of the entry of this Judgment, and the remaining amount of $626,927.88 within thirty days of the entry of this Judgment.

11. Payment shall be by made by one of the following methods:

 a. For electronic payment, visit www.pay.gov and perform the following:

  i. Open the "Find an Agency" tab and click on "L" and then "Labor (DOL): Wage and Hour Division (WHD)."

  ii. Click on the "Continue to Form" tab under "WHD Back Wage Payment Form –Northeast Region."

  iii. Select "Continue to Form" and complete the required fields:

   a. The "BW Case Number" is Case No. 1807182.

   b. The "Date of Assessment" is the date of this Order.

 b. For payment by cashier or certified check:

  i. Make the check payable to "Wage and Hour Division – Labor" with "Case No. 1807182" written on the face of the check;

  ii. Mail with a trackable delivery method to:

   United States Department of Labor – Wage & Hour Division

>The Curtis Center, Suite 850 West
>170 S. Independence Mall West
>Philadelphia, PA 19106-3317
>Attn: William Schweizer

>   iii. Mail a copy of the cashier's check to:

>>Michael Fitzgerald, Assistant District Director
>>U.S. Department of Labor, Wage and Hour Division
>>Buffalo Area Office
>>130 S. Elmwood Avenue, Room 534
>>Buffalo, NY 14202

12. The Secretary shall distribute defendant Sanchez-Ocampo's payments less any legal deductions to the employees, or to their estates, as set forth in Exhibit A. Any sums not distributed to the employees or their personal representatives or estates because of inability to locate the proper persons or because of such persons' refusal to accept such sums shall be forwarded to the Wage and Hour Division at the above address. Any amounts of unpaid compensation and liquidated damages not distributed within a period of three years from the date of receipt shall, pursuant to section 16(c) of the Act, be covered into the Treasury of the United States as miscellaneous receipts. Defendant Sanchez-Ocampo remains responsible for paying the employer's share of any applicable taxes to the appropriate state and federal revenue authorities.

13. ORDERED that neither defendant Sanchez-Ocampo nor any one on acting on his behalf shall directly or indirectly solicit or accept the return or refusal of any sums paid under this Judgment.

14. If defendant Sanchez-Ocampo fails to make the payments as set forth in paragraph 9, a five calendar-day grace period shall be allowed for receipt of each payment. In the event that the U.S. Department of Labor does not receive each payment check by the sixth calendar day after which it is due, the U.S. Department of Labor's representatives will notify defendant Sanchez-Ocampo through his attorney, Paul Dell, by email at pgdell@aol.com. Defendant Sanchez-

Ocampo is responsible for timely notifying the U.S. Department of Labor of any change in the identity or contact information of his attorney. If the U.S. Department of Labor does not receive payment within three days of notifying defendant's attorney of an overdue payment, then the total amount due under this Judgment ($628,827.88), less any amounts already received by the Secretary pursuant to this Judgment, shall become due immediately. No action or non-action by the Secretary shall constitute a waiver of this paragraph.

15. Neither the commencement of this action nor the provisions of this Judgment shall in any way affect, determine, or prejudice any and all legal rights of any employees of defendants not listed in Exhibit A of this Judgment, be they current or former employees, to file any action against defendant under section 16(b) of the Act or likewise for any current or former employee listed on Exhibit A of this Judgment to file any action against the defendants under section 16(b) of the Act for any violations alleged to have occurred after October 18, 2016.

16. This Judgment resolves claims against defendant Sanchez-Ocampo and does not resolve the Secretary's claims against the non-settling defendants, Sergio Mucino, Agave Elmwood, Inc. d/b/a Agave Mexican Restaurant, Don Tequila Dos, Inc. d/b/a El Agave Mexican Restaurant, Don Tequila, Inc. d/b/a Don Tequila Mexican Restaurant, Don Tequila 73, Inc., and Mis Reinas Foods, Inc. d/b/a La Divina Mexican Store.

17. Each party will bear its own fees and other expenses incurred by such party in connection with any stage of this proceeding.

**SO ORDERED.**

DATED: _____, 2018
          Buffalo, New York

                                        HONORABLE ELIZABETH A. WOLFORD
                                        UNITED STATES DISTRICT JUDGE

Defendant has appeared by the undersigned counsel and hereby consents to the entry of this Judgment.

_____
JOSE MANUEL SANCHEZ-OCAMPO

_____
Paul Dell, Esq.
Law Office of Paul G. Dell
70 Niagara Street
Buffalo, NY 14202
716-362-1156
pgdell@aol.com

*Counsel for Defendant Sanchez-Ocampo*

## EXHIBIT A

## Back Wages and Liquidated Damages Due

| EMPLOYEE'S NAME | BACK WAGES DUE | LIQUIDATED DAMAGES DUE | TOTAL |
|---|---|---|---|
| Alejandra Valdez-Leon | $82,219.25 | $82,219.25 | $164,438.50 |
| Daniel Calva-Serrano | $79,097.00 | $79,097.00 | $158,194.00 |
| Jerry Rodriguez-Hernandez | $21,906.75 | $21,906.75 | $43,813.50 |
| Joel Hernandez-Martinez | $93,927.69 | $93,927.69 | $187,855.38 |
| Jonathan Doe | $447.50 | $447.50 | $895.00 |
| Josias Guadalupe Rodriguez-Velazquez | $5,250.00 | $5,250.00 | $10,500.00 |
| Luis Fernando Marroquin-Santizo | $26,345.75 | $26,345.75 | $52,691.50 |
| Pablo Caal-Caal | $5,220.00 | $5,220.00 | $10,440.00 |
| TOTALS | $314,413.94 | $314,413.94 | $628,827.88 |