UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EUGENE SCALIA,[1] Secretary of
Labor, United States Department of Labor,

                Plaintiff,

      v.

AGAVE ELMWOOD INC. d/b/a AGAVE
MEXICAN RESTAURANT;
DON TEQUILA DOS, INC. d/b/a EL
AGAVE MEXICAN RESTAURANT;
DON TEQUILA, INC. d/b/a DON
TEQUILA MEXICAN RESTAURANT;
DON TEQUILA 73, INC. d/b/a DON
TEQUILA MEXICAN RESTAURANT, as
successor to DON TEQUILA, INC.;
MIS REINAS FOODS, INC. d/b/a LA
DIVINA MEXICAN STORE;
SERGIO MUCINO, individually; and
JOSE MANUEL SANCHEZ-OCAMPO,
individually,

                Defendants.
_____

**DECISION AND ORDER**

1:17-CV-00605 EAW

## INTRODUCTION

Plaintiff Eugene Scalia, Secretary of Labor for the United States Department of Labor ("Plaintiff" or "Secretary") commenced this action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*. (Dkt. 1). Plaintiff seeks back wages, liquidated damages, and injunctive relief from defendants Agave Elmwood Inc.

---

[1]     On September 30, 2019, Eugene Scalia became the United States Secretary of Labor. Accordingly, the Clerk of Court is instructed to substitute Secretary Scalia as the plaintiff in his action pursuant to Federal Rule of Civil Procedure 25(d).

- 1 -

d/b/a Agave Mexican Restaurant ("Agave Elmwood"); Don Tequila Dos, Inc. d/b/a El Agave Mexican Restaurant ("Don Tequila Dos"); Don Tequila, Inc. d/b/a Don Tequila Mexican Restaurant ("Don Tequila"); Don Tequila 73, Inc. d/b/a Don Tequila Mexican Restaurant, as successor to Don Tequila, Inc. ("Don Tequila 73"); and Mis Reinas Foods, Inc. d/b/a La Divina Mexican Store ("La Divina") (collectively "Corporate Defendants") and individual defendants Sergio Mucino ("Mucino") and Jose Manuel Sanchez-Ocampo ("Sanchez-Ocampo") for allegedly failing to pay employees minimum wage and overtime premiums, and for maintaining false and inaccurate time and pay records. (*Id.*).

Pending before the Court is Plaintiff's motion to enforce a settlement agreement between Plaintiff and both the Corporate Defendants and Mucino (collectively "Defendants"). (Dkt. 40). For the reasons set forth below, Plaintiff's motion is denied.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On June 30, 2017, the U.S. Secretary of Labor initiated this action against the Corporate Defendants and individual defendants Mucino and Sanchez-Ocampo, alleging that they willfully violated the FLSA by failing to pay employees minimum wage, overtime pay, and by maintaining false and inaccurate time and pay records. (Dkt. 1).

Mucino and the Corporate Defendants answered the Complaint and lodged a crossclaim against Sanchez-Ocampo on July 31, 2017. (Dkt. 5). Sanchez-Ocampo filed his own answer and crossclaim against Mucino on September 9, 2017 (Dkt. 9 at ¶ 14), which Mucino then answered (Dkt. 13).

On September 26, 2018, the Secretary sought this Court's approval of a proposed consent judgment as to Sanchez-Ocampo. (Dkt. 34). The Court found the proposed consent judgment to be acceptable, and granted the Secretary's motion. (Dkt. 37).

The Sanchez-Ocampo Consent Judgment only resolved claims against Sanchez-Ocampo, and did not resolve any claims against Mucino or the Corporate Defendants. (Dkt. 37 at 16). In the Sanchez-Ocampo Consent Judgment, Sanchez-Ocampo admitted that he was the general manager of Don Tequila; a manager of Agave Elmwood, Don Tequila Dos, and La Divina; and that he failed to keep accurate pay and time records and pay overtime to Don Tequila employees. (Dkt. 37 at 11-12).

Discovery proceeded as to Mucino and the Corporate Defendants. When the Complaint was filed, Mucino was a defendant in a criminal proceeding, which culminated on February 25, 2019, with a one-year prison sentence following a guilty plea.[2] The pendency of this criminal proceeding impacted the scheduling of depositions in the civil matter.

The Secretary had originally noticed the depositions of Mucino and the Corporate Defendants for May 2 and May 3, 2018. (Dkt. 31 at ¶ 4). The depositions of the Corporate Defendants were noticed pursuant to Federal Rule of Civil Procedure 30(b)(6), and Mucino

---

[2] The parties have not elaborated on these criminal proceedings. The Court takes judicial notice of the proceedings in this District, *United States v. Mucino*, 1:18-cr-00053-FPG-HKS. Mucino was sentenced on February 14, 2019, to 12 months in prison and two years supervised release, after pleading guilty to one count of Tax Evasion in violation of 26 U.S.C. § 7201, and one count of Conspiracy to Unlawfully Employ More than Ten Aliens During a 12-Month Period in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(3)(A). (*See* Case No. 1:18-cr-00053-FPG-HKS at Dkt. 80; Dkt. 82).

was the witness designated by Agave Elmwood, Don Tequila, Don Tequila Dos, and La Divina to answer questions on the topics identified. (*Id.* at ¶ 5). The Secretary was advised that Mucino would likely invoke the Fifth Amendment during his testimony, and as a result, his deposition and the depositions of the four Corporate Defendants for which he was also the designated witness were adjourned multiple times. (Dkt. 42 at ¶ 2). Because Mucino was not the designated witness for Don Tequila 73, this deposition took place on May 3, 2018. (Dkt. 31 at ¶ 6).

Mucino was sentenced on February 14, 2019. (*See supra* note 1). His deposition and the depositions of Agave Elmwood, Don Tequila, Don Tequila Dos, and La Divina were scheduled for March 12 and 13, 2019. (Dkt. 42 at ¶ 3).

On Friday, March 1, 2019, Jacob Piorkowski ("Piorkowski"), counsel for Mucino and the Corporate Defendants (including Don Tequila 73) contacted Plaintiff's counsel Amy Tai ("Tai") to discuss settlement. (*Id.* at ¶ 4). According to Tai, she told Piorkowski that in order to resolve the matter, the Secretary would likely require a Consent Judgment for the full amount of back wages and liquidated damages owed. (*Id.*). In addition, because Mucino and the Corporate Defendants claimed that there were not sufficient funds to pay the Consent Judgment, Mucino must complete an affidavit attesting to his assets ("Asset Affidavit"). (*Id.*). Piorkowski asked Tai to send him these documents and indicated that he would discuss them with his clients. (*Id.*).

On Monday, March 4, 2019, Tai e-mailed Piorkowski a proposed Consent Judgment and Asset Affidavit. (*Id.* at ¶ 5). Her email noted: "With depositions scheduled for next week, I hope we can get this executed by the end of this week if not sooner." (Dkt. 42-1

at 2). Piorkowski admits receiving this email and the attachments, though he describes the attachments to the March 4 email "as draft versions of the Consent Judgment and Asset Affidavit." (Dkt. 44 at ¶ 6).

On Thursday, March 7, 2019, Piorkowski responded to Tai, indicating that his client would review the documents and respond by Monday, and asking two questions, one of which referred to the Consent Judgment:

> Sergio [Mucino] believes that he will sign these documents. He is thinking things over and will have an answer to me by Monday at the latest.
>
> I have a few questions that I think need to be addressed before he signs though.
>
> In the Consent Judgment, Paragraph 4 notes implies that Sergio owned Don Tequila 73, Inc., which he did not. I do not think he will know the date when the business stopped operating, especially since the business never started.
>
> In the FLSA Enterprise Coverage[3] document, the first paragraph is rather confusing. Not all of those businesses were in existence since 2014. Only Don Tequila was. Also, is that paragraph meant to mean that the various corporations made $500,000.00, or more cumulatively, or independently?

(Dkt. 42-2 at 2; Dkt. 44 at ¶ 7).

---

[3] In an email sent roughly an hour before she forwarded the proposed Consent Judgment and Asset Affidavit, Tai informed Piorkowski that she was preparing the settlement documents, but also alternatively asking him to execute a document related to the underlying litigation:

> I'm working on preparing a consent judgment and a financial affidavit for your clients. While I hope we will be able to resolve this matter, I am also up against the court's discovery deadline. If you are willing to sign the attached stipulation regarding FLSA enterprise coverage, I hope to avoid motion practice on the issue. And if the case resolves, I won't need to file the stipulation with the Court at a later stage in the litigation. Please get back to me today if possible.

(Dkt. 44-2 at 1).

According to Tai, she and Piorkowski then spoke by phone that same day (March 7), and she indicated that they would need to have an agreement in principle by Friday, March 8, in order to cancel the upcoming depositions of Mucino and the remaining four Corporate Defendants. (Dkt. 42 at ¶ 7). They also discussed modifications to Paragraph 4 of the Consent Judgment, and Tai asked Piorkowski to send her language modifying that paragraph, because he would be in a better position to provide information as to when Don Tequila 73 ceased operations. (*Id.*).

On Friday, March 8, Piorkowski called Tai and indicated that "he had just spoken at length with his clients and that they were going to sign the Consent Judgment for the full amount and complete the Asset Affidavit. As such, he stated that [the parties] did not need to go forward with the depositions the following week." (*Id.* at ¶ 8). According to Tai, they also agreed to add Don Tequila 73 as a signatory to the Consent Judgment, and that Piorkowski would send her revised language for Paragraph 4. *(Id.* at ¶ 9). Piorkowski admits having a phone conversion with Tai.[4] (Dkt. 44 at ¶ 8). He does not address whether or not the two discussed depositions, but he confirms that "to the best of [his] recollection, [he] expressed that his client did in fact intend to sign the Consent Judgment and Asset Affidavit." (*Id.*).

---

[4]  In his responding declaration, Piorkowski vaguely describes one conversation with Tai that occurred after he sent his March 7 email. (Dkt. 44 at ¶ 8). This appears to be a reference to a March 8 conversation described by Tai. Piorkowski does not address the March 7 telephone conversation described by Tai, nor does he address (or dispute) that the two conversed by telephone on both March 7 and March 8.

During this March 8 discussion, Tai asked Piorkowski to send her an email confirming their discussion. (Dkt. 42 at ¶ 8). Piorkowski then sent her an email confirming his clients' willingness to execute both settlement documents:

> Pursuant to our conversation from earlier today, please be advised that my clients will sign the Consent Judgment for $1,118,020.00 as well as the corresponding Asset Affidavit. I will endeavor to have this to you no later than March 13, 2019.
>
> Given the above, there will be no need to proceed with the depositions which are currently scheduled for March 12 and 13, 2019.

(Dkt. 42-3 at 2; *see also* Dkt. 42 at ¶ 10).

Tai responded, "[t]hank you for the confirmation. I look forward to receiving the executed documents by March 13. Please feel free to reach out if you have any questions." (Dkt. 42 at ¶ 11; Dkt. 42-4 at 2). Tai then canceled the depositions scheduled for March 12 and 13. (Dkt. 42 at ¶ 12).

On Monday, March 11, Tai sent Piorkowski a slight alteration to Exhibit A of the Consent Judgment, which included the amounts of back pay and liquidated damages owed to the exact penny, as opposed to rounded to the nearest dollar. (*Id.* at ¶ 13). Tai also inquired about Piorkowski's revisions to Paragraph 4:

> Please see attached for slightly revised consent judgment. The substance is all the same. The amounts in Exhibit A in the previous version were rounded to the nearest dollar. However, we used decimal points in a previous filing, so I changed the amounts to be consistent with the previous filing, so that there is no confusion about the amounts owed. As we discussed, please send me the language you would like to insert for paragraph 4 and to add a signature line for Don Tequila 73, Inc.

(Dkt. 42-5 at 2).

- 7 -

On March 12, Tai sent Piorkowski a new version of the Consent Judgment, this time making minor alterations to Paragraph 15. (Dkt. 42 at ¶ 14). Originally, Paragraph 15 indicated that monies that could not be distributed would be forwarded to the Wage and Hour Division. (Dkt. 42 at ¶ 14; Dkt. 42-5 at 2). This language was changed to indicate that these funds would go the U.S. Treasury, as required by statute. (*Id.*).

Piorkowski did not communicate with Tai about these changes. Instead, on March 13, Piorkowski requested the final versions of both the Consent Judgment and the Asset Affidavit:

> Can you send me final Word versions of both documents you are requesting that my client sign?
>
> Due to some scheduling issues, he will be in tomorrow afternoon. I will send the documents to you as soon as he has signed them.

(Dkt. 42 at ¶ 15; Dkt. 42-7 at 2).

In his responding declaration, Piorkowski acknowledges receiving both the March 11 and March 12 emails. (Dkt. 44 at ¶¶ 11-12). Piorkowski argues that these additional revisions to the documents demonstrate that there was no "meeting of the minds." (*Id.* at ¶¶ 10-12).

Tai responded to this email that same day, March 13, at 10:43 a.m., by attaching the final versions, and noting that she was awaiting his changes to Paragraph 4:

> Please see attached. Note that the financial affidavit requires additional documents to be attached. We also haven't finalized the language yet for paragraph 4 regarding Don Tequila 73, so please send me the language that you had proposed. I've added a signature line for Don Tequila 73.

(Dkt. 42 at ¶ 16; Dkt. 42-8 at 2).

Later that day, at 2:22 p.m., Tai communicated with Piorkowski about a separate administrative proceeding pending before the U.S. Department of Labor:

> Separate from the district court litigation, the U.S. Department of Labor assessed civil money penalties against Mr. Mucino and the four restaurants (attached). So that we can resolve all pending matters against your clients, we request that you withdraw the attached exception letter, so that Mr. Mucino does not have to defend a separate administrative action.

(Dkt. 44 at ¶ 13; Dkt. 44-6 at 1; Dkt. 46-1 at 2).

According to Tai, on April 26, 2017, prior to the filing of the Complaint in the instant litigation, the Wage and Hour Division assessed civil money penalties under the FLSA, 29 U.S.C. § 216(e)(2), against Mucino and four of the Corporate Defendants. (Dkt. 46 at ¶ 2). On May 11, 2017, Piorkowski sent a letter contesting these penalties and requesting an administrative hearing. (*Id.*). Tai describes her email as seeking the withdrawal of this letter, without tying her request to the pending resolution of the instant civil matter. (*Id.* at ¶ 3).

Piorkowski indicates that on Thursday, March 14, he met with his clients "in person to discuss the proposed settlement in detail. Upon review of the Consent Judgment and Asset Affidavit as provided by Ms. Tai, the Defendants decided that these were documents that they could not sign." (Dkt. 44 at ¶ 14). According to Piorkowski, although he "is bound by client confidentiality, it can be stated that upon a detailed review of the proposed documents with the Defendants, your Declarant could not recommend that same be signed." (*Id.* at ¶ 15).

On Friday, March 15, Tai emailed Piorkowski about the documents, and the exception letter:

> Will you be sending the executed documents today? I also have not received the proposed language for paragraph 4 regarding Don Tequila 73, Inc. Please also let me know whether you will be withdrawing the CMP exception letter, so that we can resolve all issues.

(Dkt. 46-2 at 2).

Piorkowski then called Tai and informed her that his clients had changed their minds. (Dkt. 42 at ¶ 17). Due to the impending discovery deadline, the parties discussed dates for rescheduling depositions, because Mucino was scheduled to begin serving a one-year prison sentence. (Dkt. 46 at ¶ 5). Tai emailed Piorkowski and asked that two dates be held for depositions. (Dkt. 46-3 at 2). In that email, which included a forwarded copy of Piorkowski's March 8 email indicating that his clients would sign the Consent Judgment and Asset Affidavit, Tai noted: "Please be advised that we are also looking into our rights to enforce the below agreement." (*Id.*).

According to Piorkowski, he and Tai had "a number of telephone conversations . . . wherein various terms and provisions were discussed which may [have made] the subject settlement documents more palatable for the Defendants to sign. No agreement was reached as to the specifics of these terms," and the motion to enforce the agreement was filed on March 22, 2019. (Dkt. 44 at ¶ 16).

In her Reply Declaration, Tai described a second call on March 15, during which she told Piorkowski that the Secretary intended to file a motion to enforce the settlement agreement. (Dkt. 46 at ¶ 7). By email, Piorkowski asked Tai to provide him with the applicable rule or case law that supported her position. (Dkt. 46 at ¶ 7; Dkt. 46-2 at 2). Tai

provided him with case law on Monday, March 18, and suggested that the two of them discuss effecting the settlement, to avoid motion practice. (Dkt. 46 at ¶ 8; Dkt. 46-5 at 2).

Tai briefly described discussions between her and Piorkowski, which she states occurred from March 18 through March 20, regarding modifying the period covered in the Asset Affidavit. (Dkt. 46 at ¶ 9). According to Tai, on March 20, she made it clear to Piorkowski that she would file the instant motion if she did not hear back from him by the following day. (*Id.*). The motion was filed on March 22, 2019.

## DISCUSSION

### I. Legal Standard

Settlement agreements are contracts, and basic principles of contract law dictate whether, in the absence of a formal, executed agreement, the parties have entered into a binding agreement. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). Regardless of whether the underlying litigation arises under federal or state law, in determining whether the parties have agreed to be bound, "there is no material difference between the applicable state law or federal common law standard. . . ." *Id.* (declining to resolve question of whether New York or federal common law governs the potential settlement of claims arising under federal and state law); *Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *7 n.1 (E.D.N.Y. Mar. 31, 2019) (noting Second Circuit has not ruled as to application of federal or state law, but that federal common law and New York law are "materially indistinguishable"), *appeal dismissed*, 799 F. App'x 77 (2d Cir. Apr. 2, 2020). "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement."

*Cornelius v. Indep. Health Ass'n, Inc.*, 912 F. Supp. 2d 26, 30 (W.D.N.Y. 2012) (quoting *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006)).

The Secord Circuit has set forth four factors for courts to consider in determining "whether the parties intended to be bound in the absence of a document executed by both sides." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Courts must consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Ciaramella*, 131 F.3d at 322 (quoting *Winston*, 777 F.2d at 80). None of these factors is dispositive, "but each provides significant guidance." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) (quoting *Ciaramella*, 131 F.3d at 323).

## II.   Analysis

The Secretary asserts that all of the *Ciaramella* factors indicate that Mucino and the Corporate Defendants entered into an enforceable settlement agreement. On March 8, Piorkowski conveyed that his clients would "sign the Consent Judgment for $1,118,020.00 as well as the corresponding Asset Affidavit." (Dkt. 42-3 at 2; *see also* Dkt. 42 at ¶ 10). According to the Secretary, this constituted a binding, preliminary agreement. Specifically, the Secretary argues that Piorkowski did not articulate that his clients would only be bound by a final, written agreement, the cancelations of the impending depositions constituted partial performance of the preliminary agreement, all of the material terms of the agreement

were essentially agreed upon during the parties' email correspondence, and that Piorkowski's email indicating that his client would sign the Consent Judgment and the Asset Affidavit created an "agreement in principle in writing." (Dkt. 41 at 9-14). Plaintiff asks the Court to enter the Consent Judgment and order Mucino to complete the Asset Affidavit.

Defendants concede that at no point during negotiations did their counsel articulate an express reservation of the right not to be bound in the absence of a writing. (Dkt. 44-8 at 8). In other words, it appears undisputed that the first of the *Ciaramella* factors favors the Secretary. However, Defendants contend that their conduct plainly implicated the need for a written agreement, that there was no partial performance, the terms of the final agreement were not finalized, and the ultimate settlement of this action is the type of agreement that is usually committed to writing. (*Id.* at 8-10).

The Court has carefully considered the circumstances concerning the failed settlement attempt in this case, and while certain aspects of the negotiations support the Secretary's position, on the whole the Court concludes that this is not one of those cases where the Court should enforce a settlement agreement over Defendants' objections.

### A.     Partial Performance

According to the Secretary, based on Defendants' March 8 agreement to sign the Consent Judgment and Asset Affidavit, Tai cancelled the depositions scheduled to occur the next week. Defendants dispute that this constituted partial performance, since there was no partial performance of the terms of the proposed resolution.

- 13 -

Here the purported agreement occurred on March 8, the Secretary canceled depositions scheduled for the next week, and by March 15, Defendants indicated that they could not sign the Consent Judgment or complete the Asset Affidavit. At that point, the parties began discussing new deposition dates, though Tai also made clear that the Secretary would likely move to enforce the agreement. One week later, on March 22, the Secretary filed the instant motion.

While the Secretary arguably suffered some prejudice by cancelling the depositions in reliance on Defendants' inaccurate representation that the case could be resolved,[5] the reality is that the depositions and cancellation thereof were not part of the terms of the settlement agreement. Thus, the Court is hard-pressed to conclude that the cancellation of the depositions somehow constituted partial performance of the settlement. Moreover, even assuming that this one-week delay in the prosecution constituted partial performance, this factor is at best neutral in the Court's analysis. *See Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002) (party's decision not to resume active litigation during settlement discussions "does not tip the balance in either direction").

**B.    Agreement to All Terms**

The third factor requires the Court to consider "whether there was 'literally nothing left to negotiate.'" *Winston*, 777 F.2d at 82 (quoting *R.G. Group, Inc. v. Horn Hardart*

---

[5]     While prejudiced, the reality is that Defendants' conduct resulted in a one-week delay of the prosecution of this matter by the Secretary. The parties could have immediately rescheduled the depositions and proceeded with discovery (and they initially appeared on track to do so), but the Secretary's decision to file this motion to enforce (and the briefing on that motion and the Court's consideration of that motion) ultimately was the reason for the much more extensive delay in the prosecution of this litigation.

*Co.*, 751 F.2d 69, 76 (2d Cir. 1984)).  "[E]ven 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing."  *Powell*, 497 F.3d at 130 (citation omitted).  However, these changes "are relevant . . . only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect."  *Id.*  (internal quotation marks and citation omitted).

There is no dispute that the parties had agreed on the monetary amount of the settlement.  It is also undisputed that after March 8, the Secretary proposed two separate changes to the Consent Judgment.  The Secretary describes these changes as "ministerial," and there is no indication whatsoever that these changes impacted Defendants' contemplation of the agreement in any way.

On the other hand, it is apparent that the parties had not yet agreed upon specific language relating to Defendant Don Tequila 73.  Although it appears that the parties had generally agreed that paragraph 4 of the Consent Judgment would be altered, and that Piorkowski would provide Tai with proposed language, this language was not yet finalized.  On March 13, Piorkowski asked Tai to forward the "final Word version of both documents you are requesting that my client sign."  (Dkt. 42-8 at 2).  As part of her covering email forwarding the documents, Tai noted, "[w]e also haven't finalized the language yet for paragraph 4 regarding Don Tequila 73, so please send me the language that you had proposed."  (*Id.*).  As a result, the Consent Judgment, as written, was not fully negotiated.

Moreover, the relief requested by the Secretary highlights that any settlement agreement was not fully negotiated. The Secretary asks the Court to "enter the Consent Judgment as agreed to on March 8," but does not address how the Court should specifically resolve the incomplete language regarding Don Tequila 73. (Dkt. 41 at 11). The Secretary also asks the Court to do more than just enter the Consent Judgment. The Secretary asks the Court to "order" that Defendant Mucino complete the Asset Affidavit. (*Id.*). Yet completion of the Asset Agreement is not a component of the Consent Judgment (*see* Dkt. 42-1 at 3-13), suggesting that the Secretary is instead seeking specific performance of a separate agreement to agree, a proposition not briefed by the Secretary. This additional ambiguity further reinforces the Court's determination than any agreement was not fully negotiated.

### C. Type of Contract Usually Committed to Writing

The Secretary does not address whether an agreement to resolve an FLSA action is a type of contract that is usually committed to writing. Instead, the Secretary argues that the email communication from Piorkowski was itself "a writing confirming an agreement had been reached," and thus satisfies this requirement. (Dkt. 41 at 11).

Agreements to settle FLSA claims are typically committed to writing. *See Ji*, 2019 WL 1441130, at *12 ("Nevertheless, the fourth factor weighs heavily against enforcement because agreements to settle FLSA claims are virtually always memorialized in writing."); *Hernandez v. Fresh Diet Inc.*, No. 1:12-cv-4339, 2017 WL 4838328, at *4 (S.D.N.Y. Oct. 25, 2017) ("ultimately dispositive" as to whether unsigned agreement would be enforced was "the type of settlement agreement at issue here . . . FLSA settlement"); *Alvarado v.*

*Five Town Car Wash, Inc.*, No. 13 CV 1672 (RJD)(JO), 2014 WL 252015, at *2 (E.D.N.Y. Jan. 22, 2014) ("[W]ritten agreements are the norm when parties seek to settle claims under the FLSA."); *c.f. Reich v. Best Built Homes, Inc.*, 895 F. Supp. 47, 50 (W.D.N.Y. 1995) (enforcing FLSA settlement articulated orally to the court by the parties on the record). Moreover, had the parties signed the Consent Judgment, the parties would then have been required to seek the Court's approval before the Judgment could be entered, and the Court would have determined "whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved,'" because the "the consent decree includes injunctive relief." (Dkt. 37 at 3 (quoting *S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014)). Indeed, as have other courts, this Court finds this factor particularly dispositive of the pending motion, requiring denial of the motion to enforce. *See*, *e.g.*, *Velazquez v. Yoh Serv., LLC*, No. 17 Civ. 00842 (CM), 2017 WL 4404470, at *3 (S.D.N.Y. Sept. 25, 2017) ("Put otherwise, no settlement of an FLSA case is enforceable until it has been approved by a federal judge[.] This Court requires parties to submit their settlements in writing, for approval, together with a joint letter motion. That could not possibly happen here.").

In weighing the *Ciaramella* factors, "[n]o single factor is decisive, but each provides significant guidance." *Ciaramella*, 131 F.3d at 323. Here, the parties did not articulate an express reservation of the right not to be bound in the absence of a writing. Assuming without deciding that a one-week interruption of the prosecution of this matter constituted partial performance, the Court finds that this factor is neutral to its analysis. With respect to the final two factors, any agreement was not fully negotiated, and the type of agreement

at issue here is one that is typically reduced to writing. In considering all these factors, the Court does not find that the parties intended to be bound in the absence of a document executed by both sides.

## CONCLUSION

For the foregoing reasons, the Secretary's motion seeking to enforce the settlement agreement (Dkt. 40) is denied. The matter is referred back to United States Magistrate Judge Hugh B. Scott for the further supervision of discovery.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 28, 2020
       Rochester, New York