UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE SU, Acting Secretary of
Labor, United States Department of Labor,[1]

                Plaintiff,

       v.

AGAVE ELMWOOD INC. d/b/a AGAVE
MEXICAN RESTAURANT;
DON TEQUILA DOS, INC. d/b/a EL
AGAVE MEXICAN RESTAURANT;
DON TEQUILA, INC. d/b/a DON
TEQUILA MEXICAN RESTAURANT;
DON TEQUILA 73, INC. d/b/a DON
TEQUILA MEXICAN RESTAURANT, as
successor to DON TEQUILA, INC.;
MIS REINAS FOODS, INC. d/b/a LA
DIVINA MEXICAN STORE;
SERGIO MUCINO, individually; and
JOSE MANUEL SANCHEZ-OCAMPO,
individually,

                Defendants.

_____

**DECISION AND ORDER**

1:17-CV-00605 EAW

Plaintiff Julie Su, Acting Secretary of Labor for the United States Department of Labor ("Plaintiff" or "Secretary"), commenced this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. (the "FLSA"). (Dkt. 1). In the complaint, Plaintiff seeks back wages, liquidated damages, and injunctive relief from defendants

---

[1]     On or about March 11, 2023, Julie Su became the Acting Secretary of Labor upon the departure of Martin Walsh, and therefore is substituted as the plaintiff pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to update the docket to reflect this substitution.

Agave Elmwood Inc. d/b/a Agave Mexican Restaurant ("Agave"); Don Tequila Dos, Inc. d/b/a El Agave Mexican Restaurant ("El Agave"); Don Tequila, Inc. d/b/a Don Tequila Mexican Restaurant ("Don Tequila"); Don Tequila 73, Inc. as successor to Don Tequila, Inc. d/b/a Don Tequila Mexican Restaurant ("Don Tequila 73"); Mis Reinas Foods, Inc. d/b/a La Divina Mexican Store ("La Davina") (collectively "Corporate Defendants"); and individual defendants Sergio Mucino ("Mucino") and Jose Manuel Sanchez-Ocampo ("Sanchez-Ocampo") (collectively "Defendants") for allegedly failing to pay employees minimum wage and overtime premiums, and for maintaining false and inaccurate time and pay records.  (*Id.*).

Currently before the Court is Plaintiff's motion for default judgment against Agave, El Agave, Don Tequila, La Davina, and Mucino ("Defaulting Defendants").[2]  (Dkt. 91). For the reasons set forth below, Plaintiff's motion for default judgment is granted.

## BACKGROUND

The Court has issued several prior Decisions and Orders in this matter (Dkt. 37; Dkt. 47; Dkt. 88), familiarity with which is assumed for purposes of this Decision and Order.  For ease of reference, the Court has summarized the salient facts and procedural history below.

---

[2]     Plaintiff indicates that it does not seek default judgment against defendant Don Tequila 73, who continues to be represented by counsel and no entry of default has been obtained against it.  (Dkt. 92 at 2 n.1).  To the extent this Decision and Order refers to the actions of Defendants, it is for ease of reference and is not intended to indicate that Don Tequila 73 engaged in any such conduct, which through its answer it denies.  (*See* Dkt. 5). Also, as noted *infra*, the claims against individual defendant Sanchez-Ocampo were resolved by consent judgment on October 29, 2018.  (Dkt. 37).

The following alleged facts are drawn from the complaint.  *See Walsh v. Dependable Care LLC*, No. 19CV1081(RPK)(ST), 2022 WL 4301033, at *1 (E.D.N.Y. Aug. 1, 2022) ("The following facts are taken from Plaintiff's amended complaint, as a defendant is deemed to have admitted all the well-pleaded allegations therein when, as here, the Clerk of Court has entered default against it." (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992))).

Defendants operate Mexican restaurants in or around Buffalo, New York.  (Dkt. 1 at 1).  From June 30, 2014, until at least October 18, 2016, Mucino was in active control and management of all the Corporate Defendants; regulated the employment of all employees; and also had the authority to and did hire, fire, and supervise employees, control their hours worked, determine employee compensation, and otherwise act directly and indirectly in the interest of the Corporate Defendants.  (*Id.* at ¶ 11).  Sanchez-Ocampo was a manager of Agave Elmwood, La Divina, El Agave, and Don Tequila.  (*Id.* at ¶¶ 13, 22).  He had the authority to hire, fire, and supervise employees; control their hours worked; and determine their compensation.  (*Id.* at ¶ 13).

Defendants employed dishwashers, cooks, servers, bussers, bartenders, and hosts at their restaurants.  (*Id.* at ¶ 22).  They had both part-time and full-time servers, and the full-time servers typically worked more than 40 hours per week.  (*Id.* at ¶¶ 25-26).  Defendants usually did not pay the full-time servers any hourly wages, forcing those servers to rely solely on tips received from customers.  (*Id.* at ¶¶ 25, 29).  Defendants also did not inform the servers that their tips would be credited against the minimum wage.  (*Id.* at ¶ 31).  Additionally, the kitchen employees and bussers generally worked 60 to 66 hours per week.

(*Id.* at ¶¶ 33-34).  These employees were generally paid a fixed weekly sum regardless of how many hours they worked, and their pay rate regularly fell below the applicable minimum wage.  (*Id.* at ¶¶ 35-39).  Defendants also did not pay several employees at all for construction work done at El Agave or for their last week of work.  (*Id.* at ¶¶ 41-43).

The records kept of employees' daily and weekly hours, employees' regular hourly rates and weekly payments, number of employees, and payroll were not adequately or accurately kept.  (*Id.* at ¶¶ 45-49).  Instead, Defendants paid their employees in cash and check while maintaining inaccurate records.  (*Id.* at ¶ 50).

## PROCEDURAL BACKGROUND

On June 30, 2017, the U.S. Secretary of Labor initiated this action against the Corporate Defendants and individual defendants Mucino and Sanchez-Ocampo, alleging that they willfully violated the FLSA by failing to pay employees minimum wage, overtime pay, and by maintaining false and inaccurate time and pay records.  (Dkt. 1).[3]

Mucino and the Corporate Defendants answered the Complaint and lodged a crossclaim against Sanchez-Ocampo on July 31, 2017.  (Dkt. 5).  Sanchez-Ocampo filed his own answer and crossclaim against Mucino on September 9, 2017 (Dkt. 9 at ¶ 14), which Mucino then answered (Dkt. 13).

---

[3]     "The FLSA grants the Secretary of Labor the right 'to bring an action by or on behalf of any employee' to recover unpaid minimum wages or overtime compensation.  *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) (quoting 29 U.S.C. § 216(c)).

On September 26, 2018, the Secretary sought this Court's approval of a proposed consent judgment as to Sanchez-Ocampo.  (Dkt. 34).  The Court found the proposed consent judgment to be acceptable and granted the Secretary's motion.  (Dkt. 37).

The Sanchez-Ocampo Consent Judgment only resolved claims against Sanchez-Ocampo, and did not resolve any claims against Mucino or the Corporate Defendants.  (*Id.* at 16).  In the Sanchez-Ocampo Consent Judgment, Sanchez-Ocampo admitted that he was the general manager of Don Tequila; a manager of Agave, Don Tequila, and La Divina; and that he failed to keep accurate pay and time records and pay overtime to Don Tequila employees.  (*Id.* at 11-12).

On October 1, 2020, counsel for Defaulting Defendants was permitted to withdraw.  (Dkt. 69).  The Corporate Defendants were advised that they could not appear in the case without representation by an attorney.  (*Id.*).  With the exception of Don Tequila 73, Inc., d/b/a/ Don Tequila Mexican Restaurant, as successor to Don Tequila, Inc., no counsel has filed a notice of appearance for the Corporate Defendants.  (Dkt. 62).

On January 22, 2021, Plaintiff obtained an entry of default against the four unrepresented Corporate Defendants:  Agave, El Agave, Don Tequila, and La Divina.  (Dkt. 81).

On February 5, 2021, Plaintiff filed a motion for sanctions against Defendant Mucino, who was proceeding *pro se*, for failure to comply with the Court's October 1, 2020 Order (requiring, among other things, notification of an address for service).  (Dkt. 82).  On August 24, 2021, the Court granted Plaintiff's unopposed motion for sanctions and directed the Clerk to provide an entry of default against Mucino if he did not provide

an updated address as directed.  (Dkt. 88).  Mucino did not comply and the Clerk entered default against Mucino.  (Dkt. 90).

On December 2, 2022, Plaintiff filed the instant motion for default judgment against Defaulting Defendants.  (Dkt. 91).  No response has been filed by any Defaulting Defendant.

## **DISCUSSION**

### I.   **Standard for Entry of Default Judgment**

Federal Rule of Civil Procedure 55 sets forth the procedural steps for entry of a default judgment.  First, a plaintiff must seek entry of default where a party against whom it seeks affirmative relief has failed to plead or defend in the action.  Fed. R. Civ. P. 55(a).  Plaintiff has obtained entry of default against each of the Defaulting Defendants.  "Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); see also Fed. R. Civ. P. 55(b).  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . ."  *Cement & Concrete Workers District Council Welfare Fund v. Metro Found. Contr.*, 699 F.3d 230, 234 (2d Cir. 2012); *see also Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) ("Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  (citation omitted)).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of default*." Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at

*5 (E.D.N.Y. Sept. 16, 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)).  The three factors include: (1) "whether the defendant's default was willful"; (2) "whether the defendant has a meritorious defense to plaintiff's claims[;]" and (3) "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.*  "[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's liability] as a matter of law." *City of N. Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotations and citation omitted).  Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## II.    Willfulness

The Court's first inquiry is whether Defaulting Defendants' default was willful. "[Defendants'] failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness." *Krevat*, 2014 WL 4638844, at *6 (citation omitted); *see also S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) ("willful" default found when "the conduct of counsel or the litigant was egregious and was not satisfactorily explained," such as "for flimsy reasons, [failure] to comply with scheduling orders," or failing to answer a complaint after evading service for months); *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02Civ.9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. April 25, 2003) ("Defendants, having failed to respond in any way to the Summons and Complaint or otherwise make any appearance in this action and having failed to provide any explanation for its failure to defend, have defaulted

willfully."). Accordingly, here, because Defaulting Defendants have failed to defend this case, comply with Court orders, or file opposition to the instant motion, this element has been met.

## III.   Meritorious Defenses

The Court next considers whether Defaulting Defendants have meritorious defenses to Plaintiff's claims. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins*. Co., 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted). "While a defendant need not establish his defense conclusively, he must 'present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Krevat*, 2014 WL 4638844, at *6 (citation omitted). "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Id.*

The fact that an entry of default has been entered does not alone establish liability. "With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Electronics*, Inc., No. CV 08-3067(RJD)(JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010); *see also Krevat*, 2014 WL 4638844, at *7 ("Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims."). Consequently, the Court must

- 8 -

assess whether Plaintiff's allegations, accepted as true, demonstrate Defaulting Defendant's liability as to Plaintiff's alleged causes of action.

### A.   FLSA

As noted, Plaintiff brings three claims against Defaulting Defendants pursuant to the FLSA.  First Plaintiff asserts a claim for violations of §§ 6(a) and 15(a)(2) for failure to pay minimum wage; second, a claim for violations of §§ 7(a) and 15(a)(2) for failure to pay overtime; and third, a claim for violations of §§ 11(c) and 15(a)(5) for insufficient recordkeeping.  (Dkt. 1).

"To state a claim for unpaid minimum or overtime wages under the FLSA, a plaintiff must allege that: (1) there is an employer-employee relationship; (2) the plaintiff's work or the employer's overall enterprise involves interstate commerce; and (3) the plaintiff worked for hours for which he did not receive minimum or overtime wages." *Hamza v. Yandik*, No. 1:19-CV-0447 LEK DJS, 2020 WL 2092487, at *10 (N.D.N.Y. May 1, 2020); *Ramirez v. Sake II Japanese Rest., Inc.*, No. 20CV9907(JLR)(BCM), 2023 WL 3354881, at *5 (S.D.N.Y. Apr. 24, 2023) ("To state an FLSA wage claim, a plaintiff must allege: (1) that he was an employee of each defendant sued; (2) that his work 'involved inte[r]state activity'; and (3) that he 'worked hours for which [he] did not receive minimum and/or overtime wages.'" (quoting *Pineda v. Tokana Cafe Bar Restorant Inc.*, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30, 2017)), *report and recommendation adopted*, No. 120CV09907(JLR)(BCM), 2023 WL 3346768 (S.D.N.Y. May 10, 2023).

"To adequately allege interstate activity for purposes of employer coverage, a plaintiff must state in the complaint that the defendant company: (a) is engaged in interstate

commerce; (b) has at least two employees; and (c) has gross sales of not less than $500,000." *Hamza,* 2020 WL 2092487, at *12; *see also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) (noting that employer is defined as "any person" other than a labor organization "acting directly or indirectly in the interest of an employer in relation to an employee").  An individual defendant may be held liable under the FLSA if the individual has operational control over the employees.  *See Kuan v. Notoriety Grp. LLC*, No. 22CV1583 (JLR)(KHP), 2023 WL 3937317, at *6 (S.D.N.Y. May 22, 2023), *report and recommendation adopted*, No. 1:22-CV-01583 (JLR), 2023 WL 3936749 (S.D.N.Y. June 9, 2023); *Acosta v. DRF Hosp. Mgmt. LLC*, No. CV18346 (DRH)(AKT), 2019 WL 1590931, at *9-10 (E.D.N.Y. Mar. 13, 2019) ("An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question. . . .  Individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." (quoting 29 U.S.C. § 203)), *report and recommendation adopted*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019).

"To state a claim under the FLSA for a minimum wage or overtime wage violation, a plaintiff must allege at least an approximation of the hours he worked for an employer for which he received insufficient compensation, throughout the plaintiff's term of employment." *Id.* at *13.  To recover overtime, an employee must allege that they worked "compensable overtime in a workweek longer than 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013).  The federal minimum wage during the relevant time period was $7.25 per hour.  29 U.S.C. § 206(a)(1).  The overtime

rate of pay is one and one-half times the "regular rate" of pay for all hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1).

The FLSA permits "employers to pay a lower minimum wage rate to tipped employees provided certain requirements are met – a so-called tip credit rate." *Kuan*, 2023 WL 3937317, at *7 (citing 29 U.S.C. § 203(m)).  In order to take advantage of the tip credit, certain prerequisites must be met including "the requirement that the employer notify the employee, before the employment begins, 'of its intention to include tip income when calculating wages actually paid for minimum wages purposes,'" and the burden is on the employer of establishing that the proper notice was given.  *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 16-CV-4790 (VF), 2023 WL 2401376, at *5 (S.D.N.Y. Mar. 8, 2023) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc*., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010)).

Finally, § 211(c) of the FLSA requires covered employers to "make, keep and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time . . ."  29 U.S.C § 211.  "[T]here is no private right of action to enforce 29 U.S.C. § 211(c)," and only the Secretary can pursue such claims.  *Bi v. Xia*, No. 3:18-CV-23 (JAM), 2023 WL 4684828, at *7 (D. Conn. July 21, 2023) (quoting *Fuk Lin Pau v. Jian Le Chen*, 2015 WL 6386508, at *6 (D. Conn. 2015)).

### B.       Plaintiff's Claims

Plaintiff's factual allegations adequately support the assertion that Defaulting Defendants were employers and were engaged in interstate commerce with annual gross sales exceeding $500,000 per year.

Specifically, Plaintiff's complaint sufficiently alleges that Defaulting Defendants violated the minimum wage requirements under the FLSA in three ways:

(1)     From June 30, 2014 through at least October 18, 2016, most of Defaulting Defendants' full-time servers did not receive any cash wages for most workweeks, and only received tips earned from customers.  In addition, Defaulting Defendants did not inform tipped employees of the tip notice provisions of § 3(m);

(2)     Defaulting Defendants did not pay the minimum wage to bussers and dishwashers when their fixed weekly salary divided by the hours worked fell below the minimum wage as required by the FLSA; and

(3)     Several employees were not paid any wages for weeks that they worked for Defaulting Defendants, including those who did construction or renovation work at El Agave from approximately February 2015 through June 2015, and as to some employees for their last week of work before ending their employment.

The complaint further sufficiently alleges that Defaulting Defendants violated the overtime provisions of the FLSA in the three following ways:

(1)     Full-time servers typically worked six days per work in excess of 40 hours, and often up to 66 hours per week.  Most of Defaulting Defendants' full-time servers did not receive any cash wages or overtime compensation;

(2)     Kitchen employees, including chefs, cooks, dishwashers, and prep workers, at each of the restaurants typically worked six days per week in excess of 40 hours and often up to 66 hours per week.  Dishwashers were paid a weekly salary of approximately $450 and cooks received a weekly salary between approximately $500 and $700, without regard to their hours worked in a workweek; and

(3)     Bussers typically worked six days per week in excess of 40 hours per week and often up to 66 hours per week.  Bussers were paid a weekly salary between approximately $200 and $550, without regard to their hours worked in a workweek.

Finally, Plaintiff sufficiently alleges that Defaulting Defendants did not comply with their obligation to make, keep, and preserve records of their employees' wages, hours, and employment information, as required by 29 U.S.C. § 211(c).  They allege that Defaulting Defendants violated these requirements by: (1) failing to maintain records of actual daily and weekly hours worked, reflecting regular hourly rates of pay and total weekly payments; (2) maintaining inaccurate payroll records of hours worked and pay rates; and (3) simulating compliance with the FLSA by paying some employees in cash and check, resulting in inaccurate records.

In sum, the Court accepts the allegations in the complaint and concludes that they sufficiently establish that Defaulting Defendants have violated the FLSA.  Therefore, Plaintiff is entitled to recover damages, the amount of which is set forth in detail below.

## IV.   Prejudice

Finally, the Court must next consider "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Krevat*, 2014

- 13 -

WL 4638844, at *5.  It is clear that, given Defaulting Defendants' failure to defend this matter and refusal to pay employees the amounts due under the FLSA, Plaintiff is unlikely to recover if the motion for default judgment is not granted.  Accordingly, all three factors considered militate in favor of granting default judgment on Plaintiff's claim.  *See, e.g., Higueral Produce, Inc. v. CKF Produce Corp.*, No. 18-CV-6760-NGG-SJB, 2019 WL 5694079, at *9 (E.D.N.Y. Aug. 16, 2019) (finding prejudice element satisfied because the plaintiff would otherwise be unable to recover on claims adequately alleged in complaint).

## V.   Damages

Plaintiff seeks an order finding Defaulting Defendants liable for unpaid minimum wages and overtime compensation in the amount of $529,715.80, and liquidated damages in the same amount, for a total of $1,059,431.60.

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty."  *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)).  "A court may make a damages determination upon a review of detailed affidavits and documentary evidence."  *Gov't Emp. Ins. Co. v. Erlikh*, 16-CV-7120-DLI-SJB, 2019 WL 1487576, at *24-25 (E.D.N.Y Feb. 28, 2019) (citing *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir.

1991)); *DRF Hosp. Mgmt. LLC*, 2019 WL 1590931, at *6 ("A court is not required to conduct a hearing if there is a basis for the damages specified in the default judgment.").

## A. Back Wages

Because one of Plaintiff's claims is that Defaulting Defendants failed to keep sufficient records, Plaintiff appropriately relies on the information set forth in the declaration of Wage and Hour Investigator Troy Schneider ("Schneider") to calculate its damages. (Dkt. 93). As explained by the court in *DRF Hosp. Mgmt. LLC*, 2019 WL 1590931, at *11, "in the context of an FLSA action, where an employer has failed to keep accurate or adequate records as required by the statute, 'an employee (or the Secretary on behalf of a group of employees) may submit evidence from which violations of the Act and the amount of an award may be reasonably inferred.'" (quoting *Reich v. S. New England Telecomms. Corp*. 121 F.3d 58, 66 (2d Cir. 1993)). Here, as in *DRF Hosp. Mgmt.*:

> Defendants have failed to answer or otherwise defend this action. Significantly, one of Plaintiff's central claims in the instant action is that Defendants failed to keep adequate records. As such, the only evidence available to support Plaintiffs' claims are the statements of Barto Employees, materials obtained by Investigator Stahl, and the limited documentation provided by Defendants during the course of the WHD investigation. Since Defendants have not appeared to rebut the claims contained in Plaintiff's allegations, the Court bases its recommendation with respect to damages on the evidence provided by Plaintiff concerning the hours the employees worked and the wages paid to them, and draws all reasonable inferences from such evidence.

*Id.* at *11; *see also Walsh v. Dependable Care LLC*, No. 19CV1081RPKST, 2022 WL 4301033, at *7 (E.D.N.Y. Aug. 1, 2022) ("I am convinced from the explanation of the calculation process and the extensive supporting documentation provided that the process

used by the government in this case ascertained 'with reasonable certainty' the amount owed to Hopeton Care's employees in back wages.").

Schneider is employed by the United States Department of Labor, Wage and Hour Division and his primary duties include investigations of employers to ensure compliance with federal statutes, including the FLSA.  (Dkt. 93 at ¶¶ 2-4).  During the course of Schneider's investigation, he reviewed information received from Defaulting Defendants' accountant and employees, and also reviewed documents obtained in connection with an unrelated criminal investigation of Defaulting Defendants conducted by the Department of Homeland Security.  (*Id.* at ¶ 8).  Schneider created a "Summary of Damages Due" at Exhibit A to his declaration (Dkt. 93-1), with more detailed calculations for Agave at Exhibit B (Dkt. 93-2); Don Tequila at Exhibit C (Dkt. 93-3); El Agave at Exhibit D (Dkt. 93-4); and La Davina at Exhibit E (Dkt. 93-5).

### 1.    Full-Time Servers

To compute back wages for full-time servers, Schneider relied on employee interviews to conclude they generally worked at least 60 hours per week and were not paid any cash wages, only receiving tips from restaurant customers.  (Dkt. 93 at ¶¶ 13, 14).  Most full-time servers worked six days per week and started work at approximately 10:00 a.m. and ended around 10:00 p.m. with a two-hour mid-day break.  (*Id.* at ¶ 13).  Workers at Don Tequila sometimes worked as late as 2:00 a.m. on weekends.  (*Id.*).  Schneider thus used the amount of 60 hours per week to calculate back wages and to the extent the investigation reflected that a server typically worked less than 60 hours, he used the lesser amount in his computations.  (*Id.*).  Because he determined that most full-time servers

received no cash wages, he multiplied the number of hours worked by $7.25, the FLSA minimum wage. (*Id.* at ¶ 14). He did not apply the tip credit because Defaulting Defendants did not inform tipped employees of the required notice provisions. (*Id.*). For any employee receiving a cash wage, Schneider multiplied the hours worked by the difference between $7.25 an hour and the hourly wage paid to that employee. (*Id.*).

For overtime wages for full-time servers, Schneider determined the regular rate of pay by dividing the weekly pay by the number of hours worked. (*Id.* at ¶ 16). If the hourly rate fell below the applicable state minimum wage, which is higher than the federal minimum wage, the regular rate for overtime used is the same as the state minimum wage. (*Id.* (citing 29 C.F.R. § 778.5)). For those employees not receiving any cash wages, the regular rate of pay for overtime work was the applicable minimum wage and for those whose rate is higher than the state minimum wage, the higher hourly rate was the rate of pay used. (*Id.*). For employees whose hourly rate of pay was below the regular rate of pay, Schneider subtracted $7.25, or whatever hourly rate was received, from the regular rate of pay and multiplied it by the total hours worked. (*Id.* at ¶ 17).

## 2.   Bussers and Kitchen Employees

Schneider determined that bussers and kitchen employees, which included cooks, dishwashers, and prep workers, normally worked six days a week and started at 9:00 a.m. and ended around 10:00 p.m., or later. (*Id.* at ¶ 18). Taking into account the two-hour mid-day break received by these employees, Schneider calculated that they generally worked 66 hours per week. (*Id.*). To the extent any bussers or kitchen employees worked less than that, the lesser amount is reflected in the calculation. (*Id.*).

Because bussers and kitchen employees were paid a fixed weekly sum, Schneider divided the weekly pay by the number of hours worked and if the rate fell below $7.25 an hour, he computed the difference between that number and the hours worked to determine the minimum wages owed.  (*Id.* at ¶ 19).  Shneider learned that bussers received a weekly salary between $200 and $550 a week, dishwashers received between $450 and $550, and cooks received between $480 and $725.  (*Id.* at ¶ 21).  Overtime for bussers and kitchen employees was calculated the same as the method used for full-time servers.  (*Id.* at ¶ 20).

### 3.   Missed Payments

Finally, Schneider calculated payments that the investigation demonstrated were not paid to employees who completed construction or renovation work at El Agave from approximately February 2015 through June 2015 and worked approximately 78 hours per week, as well as certain employees who were not paid for their last week of work before their employment ended.  (*Id.* at ¶¶ 22-23).  Schneider calculated the minimum wage owed and overtime owed for these employees by using the same methods he used for other employees set forth above.  (*Id.* at ¶ 24).

The Court finds Schneider's calculations reasonable.  The detailed submissions reflecting Schneider's calculations allow the Court to ascertain the amount of damages with reasonable certainty.  As a result, the Court awards, back wages in the amount of $529,715.80.

### B.  Liquidated Damages

"Under the FLSA, 'a plaintiff who demonstrates that [s]he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these

unpaid wages, an additional equal amount as liquidated damages.'" *Chen*, 2023 WL 2401376, at *11 (quoting *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016)); *see also Kuan*, No. 2023 WL 3937317, at *10 ("[A] plaintiff who successfully brings an FLSA or NYLL claim to recoup payments owed for unpaid regular wages is eligible to recover liquidated damages equal to the total amount of his or her compensatory damages." (citing 29 U.S.C. § 216(b)).

"The court may reduce or deny liquidated damages if the employer can show that 'the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing it was not a violation of [FLSA].'" *Reyes v. Coppola's Tuscan Grill, LLC*, No. 21-CV-07040 (AT)(SN), 2023 WL 4303943, at *10 (S.D.N.Y. June 13, 2023) (quoting 29 U.S.C. § 260); *report and recommendation adopted*, No. 21CIV7040 (AT)(SN), 2023 WL 4304676 (S.D.N.Y. June 30, 2023); *see also Saaba v. Deshi Senior Ctr., LLC*, No. 23-CV-1685 (BMC), 2023 WL 3819384, at *1 (E.D.N.Y. June 5, 2023) ("[Plaintiff] is also entitled to an equal amount of liquidated damages since defendants' failure to appear is sufficient evidence of willfulness."); *DRF Hosp. Mgmt. LLC*, 2019 WL 1590931, at *11 ("However, because Defendants have not answered nor responded to the instant motion, they have not carried their burden and, therefore, liquidated damages are appropriate.").

There being no showing that Defaulting Defendants' conduct was in good faith or taken with a reasonable basis for belief they were compliant with the FLSA, the Court

concludes that Plaintiff is entitled to an award of liquidated damages in the amount of $529,715.80, for a total award of $1,059,431.60.

## VI.   Injunctive Relief

Finally, the Secretary seeks injunctive relief enjoining Defaulting Defendants from violating the minimum wage, overtime, and record keeping provisions of the FLSA in the future.  "Under the FLSA, district courts have the jurisdiction to 'restrain violations' of the statute."  *DRF Hosp. Mgmt. LLC*, 2019 WL 1590931, at *12–13 (quoting 29 U.S.C. § 217). "Prospective injunctions are essential because the cost of noncompliance is placed on the employer, which lessens the responsibility of the [DOL] in investigating instances of noncompliance."  *Id.* (quoting *Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992)).

Two factors in assessing the appropriateness of the issuance of a prospective injunction are the "previous conduct of the employer and the dependability of his promises for future compliance."  *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 404 (E.D.N.Y. 2013) (quoting *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975)).  Here, the Court concludes that Defaulting Defendants willfully violated the FLSA and there is no evidence suggesting any reliability for promises of future compliance.  Accordingly, an injunction restraining Defendants from future violations of the requirements of the FLSA is appropriate.  *See, e.g., Dependable Care LLC*, 2022 WL 4301033, at *8 ("Generally, a judgment against an employer for violations of the FLSA will include a damage award and an order "enjoining future violations of the Act.").

- 20 -

## **CONCLUSION**

Based on the foregoing analysis, Plaintiff's motion for default judgment is granted. The Court finds that Plaintiff has established liability with respect to its FLSA claims and is awarded $529,715.80 in back wages and $529,715.80 in liquidated damages for a total award of $1,059,431.60.  In addition, the Court hereby enters a prospective injunction restraining and enjoining Defaulting Defendants from violating the minimum wage, overtime, and record keeping provisions of the FLSA in the future.  The Clerk of the Court shall enter judgment accordingly.  Plaintiff shall serve a copy of this Decision and Order on Defaulting Defendants at their last known addresses and shall file proof of service of the same.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:         August 7, 2023
               Rochester, New York